**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**RONALD DAVIDSON,**

                                        **Plaintiff,**                    **07-CV-599S(Sr)**

**v.**

**WESLEY CANFIELD, M.D.,**

                                        **Defendant.**

---

## DECISION AND ORDER

        This case was referred to the undersigned by the Hon. William M.

Skretny, pursuant to 28 U.S.C. § 636(b)(1)(A), for all pretrial matters.  Dkt. #18.


        Plaintiff, Ronald Davidson, filed this *pro se* action pursuant to 42 U.S.C. §

1983, alleging that between June and December 24, 2004, while he was incarcerated at

the Elmira Correctional Facility ("Elmira"), Wesley Canfield, M.D., Facility Health

Services Director at Elmira, arranged for plaintiff's transfer to Shawangunk Correctional

Facility ("Shawangunk"), so as to interfere with scheduled foot surgery and urological

surgery, in retaliation for plaintiff's filing of *Davidson v. Desai*, 03-CV-121.  Dkt. ##1 & 5.


        Currently before the Court is plaintiff's motion seeking:  the appointment

of counsel; "[a]llocation of court funds to retain a forensic software expert if counsel isn't

appointed at this time;" and, "permitting the sanction of [sic] adverse inference at trial in

the event that electronically stored information that upon information and belief is in

possession of the defendants [sic] or should have been isn't recovered and supplied to plaintiff sufficiently in advance of jury trial."  Dkt. #60.

**Appointment of Counsel**

There is no constitutional right to appointed counsel in civil cases. However, under 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants.  *See, e.g.*, *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988).  Assignment of counsel in this matter is clearly within the judge's discretion.  *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984).  The factors to be considered in deciding whether or not to assign counsel include the following:

1.   Whether the indigent's claims seem likely to be of substance;

2.   Whether the indigent is able to investigate the crucial facts concerning his claim;

3.   Whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder;

4.   Whether the legal issues involved are complex; and

5.   Whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination.

*Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997); *see also Hodge v. Police Officers*, 802 F.2d 58 (2d Cir. 1986).

The Court must consider the issue of appointment carefully, of course, because "every assignment of a volunteer lawyer to an undeserving client deprives

society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co. Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).   Therefore, the Court must first look to the "likelihood of merit" of the underlying dispute, *Hendricks*, 114 F.3d at 392; *Cooper*, 877 F.2d at 174, and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the . . . claim are thin and his chances of prevailing are therefore poor." *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (denying counsel on appeal where petitioner's appeal was not frivolous but nevertheless appeared to have little merit).

The Court has reviewed the facts presented herein in light of the factors required by law.  In support of his motion for appointment of counsel, plaintiff states that "it is essential that counsel be assigned to me in order to aggressively seek out and obtain all of my demanded documents and information needed for me to make my case in chief at trial."  Dkt. #60, p.2.  In addition, plaintiff argues that the appointment of counsel is necessary so that he can defend against the motion for summary judgment he anticipates defendant Dr. Canfield will file.  Moreover, plaintiff asserts that,

> additionally, another crucial reason for appointment of counsel is that said counsel would be able to hire a forensic software expert who can examine the DOCCS's data base and detail the steps that DOCCS could take to obtain the important data that I have sought in vain from defendants and their counsel, i.e., the departmental e-mail sent from defendant Wesley Canfield, M.D., to Pang Kooi, M.D., at 2:06 P.M. on 24 December 2004 (e-mail #765800).

*Id*. at p.3.  As will be discussed below, in the event the Court denies plaintiff's request for counsel, plaintiff requests the alternative remedy that the Court designate court

funds to be used to identify and retain a forensic software expert to examine the "DOCCS's data base(s) at their [sic] headquarters in Albany, N.Y., and elsewhere if necessary, and to detail the steps that the DOCCS should take to obtain/recover e-mail #765800 sent at 2:06 P.M. on 24 December 2004."  *Id*. at p.4.

Contrary to plaintiff's suggestions, that he needs the assistance of counsel to seek discovery from defendant Canfield and to oppose an anticipated summary judgment motion, the facts in this matter are not complex and plaintiff has not established, at this early stage of the proceedings, that he is unable to represent himself in this matter and that appointment of counsel is warranted under the factors set forth above.  In fact, plaintiff has demonstrated his capacity to obtain discovery from defendant Canfield and to articulate to the Court both the facts and legal theories supporting his claim.

Therefore, for the foregoing reasons, plaintiff's motion for appointment of counsel is denied without prejudice at this time.  It is the plaintiff's responsibility to retain an attorney or press forward with this lawsuit *pro se*.  28 U.S.C. § 1654.

**Appointment of Expert/Designation of Court Funds to Retain Expert**

Here, it appears as though plaintiff seeks the appointment of an expert (or the designation of court funds to retain an expert) not for matters relating to the trial, but rather, to assist in discovery.  More specifically, plaintiff has requested that a specific e-mail message purportedly from defendant Canfield to Pang Kooi, M.D. at 2:06 P.M. on

24 December 2004 be disclosed by defendant Canfield.  In his response to plaintiff's discovery demand, defendant Canfield stated:

> There are no copies at Auburn, in either electronic or hard copy versions, of any -mail(s) sent by defendant Wesley Canfield M.D. to Pang Kooi, M.D. at Auburn in December of 2004, or any other e-mails sent by Canfield relative to the allegations set forth in this complaint or that in general related to plaintiff, nor any responses to Canfield's e-mails. The same request has been sent to Elmira Correctional Facility, and responsive documents, if any, will be provided when received, consistent with the safety and good order of the facility.

Dkt. #35, p.3.  It is the inability of defendant Canfield to locate the requested e-mail message, assuming that it existed at one time, that has prompted the instant request for a forensic software expert.[1]  In the instant motion plaintiff states that he believes the requested e-mail, "is crucial to making my case in chief as it contains informative statements made by Dr. Canfield concerning my various complaints and upon information and belief proves my allegation that the prison transfer and denial of surgeries was retaliation for my filing my action in Davidson v. Desai, et. al., 03-CV-121S and the ways Dr. Canfield developed to 'handle' me and my complaints."  Dkt. #60, p.3.  Plaintiff seeks the assistance of a forensic software expert to devise a way to recover the e-mail or, in the event the e-mail can not be recovered, formulate an opinion as to whether DOCCS intentionally destroyed all traces of the e-mail.  *Id*. at p.4.

---

[1] Although it does not impact this Court's decision, the Court notes that it remains unclear how plaintiff is aware of this e-mail message and its precise date and time.

Although Rule 706 of the Federal Rules of Evidence permits the Court to appoint an expert witness, the retention of a forensic software expert to aid in the discovery process is not what was contemplated by the Rule.  "The determination to appoint an expert rests solely in the Court's discretion and is to be informed by such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view."  *Benitez v. Mailloux,* No. 09-CV-1160, 2007 WL 836873, at *1 (N.D.N.Y. March 15, 2007), *quoting Pabon v. Goord*, No. 99CIV5869, 2001 WL 856601, at *1 (S.D.N.Y. July 30, 2001).  "The appointment of an expert pursuant to Rule 706 is not intended to further partisan interests of any party, but to aid the Court, through the services of an impartial expert, in its assessment of technical issues."  *Benitez*, 2007 WL 836873, at *1.  Thus, the "most important factor in favor of appointing an expert is that the case involves a complex or esoteric subject beyond the trier-of-fact's ability to adequately understand without expert assistance."  *Reynolds v. Goord*, No. 98 Civ. 6722, 2000 WL 825690 at *2 (S.D.N.Y. June 26, 2000).

The Court should also bear in mind the substantial expense that the defendant may have to bear if the Court appoints an expert in a case where, as in this action, one of the parties is indigent.  *See* F.R.E. 706(b).  Given the large number of cases involving indigent prisoners, and the substantial costs that may result, appointment of an expert should be used sparingly.  *See Benitez*, 2007 WL 836873, at *2, *quoting Pabon*, 2001 WL 856601, at *2.

It is clear that plaintiff's request for a forensic software expert is for purely partisan interests and not to aid the Court as contemplated by Rule 706.  At this time, this Court is not persuaded that the retention of a forensic software expert is necessary.  As provided in the Federal Rules of Civil Procedure, the plaintiff may avail himself of a number of discovery tools in an attempt to discover statements made by defendant Dr. Canfield concerning plaintiff.  In addition, the Federal Rules of Civil Procedure provides a remedy to the extent that plaintiff is able to establish to this Court's satisfaction that the defendant failed to provide information or engaged in the spoliation of evidence.  For the foregoing reasons, plaintiff's motion is denied.

**Sanction of Adverse Inference**

Lastly, in the event that a forensic software expert cannot recover the requested e-mail, plaintiff asks that this Court "determine and declare that defendants [sic] have engaged in spoliation of electronic evidence."  Dkt. #60, p.4.  For the reasons explained above, a finding of spoliation is premature at this time.  With respect to that portion of plaintiff's request that purports to seek an adverse inference at trial, as is evident from the procedural history of this matter, this case is still in its early stages and it is anticipated that defendant Canfield will file a motion for summary judgment.  Moreover, the trial of this matter is assigned to Chief Judge William M. Skretny and all requests concerning trial inferences and jury instructions are left to the sound discretion

of the trial judge.  Accordingly, any determination concerning an adverse inference at trial is premature at this time and further, is left to Chief Judge Skretny.


**SO ORDERED.**


DATED:      Buffalo, New York
              December 4, 2012


                        _s/ H. Kenneth Schroeder, Jr._
                        **H. KENNETH SCHROEDER, JR.**
                        **United States Magistrate Judge**